WESLEY, Circuit Judge:
This case requires us to examine New York law and analyze one sentence in a New York Court of Appeals opinion that has troubled our circuit since its publication.
Background
On June 19, 1996, George Collazo was shot and killed in the Bronx while walking with his friend Michael Sanchez. The daytime shooting followed an argument sparked by Collazo’s racial epithet to two men as he and Sanchez passed them. Sanchez later identified appellant Richard Rosario as Collazo’s assailant. Robert Davis, a porter working at a nearby building, witnessed the murder and also identified Rosario as the shooter. ■ A third eyewitness was also present, but did not identify Rosario as a participant in the crime.
Rosario was arrested for the murder on July 1, 1996, after he voluntarily returned to New York from Florida. From the time of his arrest, Rosario claimed he was m Florida when Collazo was shot. Rosario provided the police with a statement, maintained his innocence, and listed the names of thirteen people who could corroborate his alibi.
Before Rosario’s trial began, he was assigned Joyce Hartsfield as counsel. Hartsfield brought an application before the court requesting funds for a private investigator to travel to Florida and interview the potential alibi witnesses. The court granted the application. Hartsfield was eventually replaced as counsel by Steven Kaiser in February of 1998. Kaiser had a mistaken belief that the application for investigation fees had been denied. Kaiser did not make a request for fees; no investigation of alibi witnesses was done in Florida.
During the trial, the prosecution called Sanchez and Porter, who identified Rosario as the shooter, and the third eyewitness, who failed to identify Rosario. The defense presented two alibi witnesses — John Torres, a friend of Rosario, and Jenine Seda, John Torres’ fiancée. Both testified that Rosario was living with them in Florida when the murder occurred. They remembered the date because their first *121 child was born on June 20th, a day after the murder.
Rosario took the stand in his own defense and testified that he was in Florida through June 80, 1996. Rosario stated he lived with a woman named Shannon Beane from February through April of 1996. The prosecution rebutted this assertion with Rosario’s Florida arrest record, which indicated that he was arrested in March of 1996 and imprisoned until April of that year. The jury convicted Rosario of second degree murder, and the court sentenced him to 25 years to life.
After Rosario’s unsuccessful direct appeal of his conviction, see People v. Rosario, 288 A.D.2d 142, 733 N.Y.S.2d 405 (1st Dep’t 2001), leave denied 97 N.Y.2d 760, 742 N.Y.S.2d 621, 769 N.E.2d 367 (2002), he filed a motion to vacate his conviction under Section 440.10(1)[1] of the New York Criminal Procedure Law on the grounds that he was deprived effective assistance of counsel at trial. The Bronx County Supreme Court held a hearing, at which Rosario’s attorneys (Hartsfield and Kaiser), the private investigator, and seven alibi witnesses testified. Hartsfield testified that she did not pursue documentary records to support Rosario’s alibi defense, including records from Western Union that were subsequently destroyed and a police field report detailing Rosario’s stop by Florida police on May 30, 1996. She also testified that, though she retained a private investigator and received funding from the court to send the investigator to Florida to investigate the alibi witnesses, she did not instruct the private investigator to do so. She conceded there was no strategic reason behind that choice.
Kaiser, for his part, stated that he did not know where he got the misimpression that the court had denied investigatory funds. He testified that he did attempt to locate or contact alibi witnesses in Florida, working from New York alone. When asked if the two alibi witnesses he called were the best witnesses, he replied “they were the only two,” , and he would have preferred to call additional alibi witnesses.
Jesse Franklin, the private investigator, testified that she had a meeting with Rosario where he provided her with a list of names for alibi witnesses. She attempted to reach all the people on the list via telephone, though it was difficult to do so because many of them had moved. Franklin raised these difficulties with Hartsfield, who instructed her to draft an affidavit detailing her difficulties for an application to the court for additidnal investigatory funds to • send Franklin to Florida. She believed traveling to Florida was necessary to investigate properly Rosario’s alibi. She never heard from Hartsfield again about the application and assumed that it had been denied. Despite not traveling to Florida, Franklin did manage to contact two of the witnesses on the list, Fernando and Robert Torres, both of whom told Franklin that they had seen Rosario in Florida in late June of 1996. Franklin did not contact those men again. However, Franklin did later contact the two witnesses who were actually called at trial, Jenine Seda and John Torres, and was told by John Torres that he could provide the names of other alibi witnesses. Franklin tried unsuccessfully to telephone other witnesses that Rosario had named.
*122 At the end of the hearing, the state court concluded that Hartsfield and Kaiser had provided Rosario with “meaningful representation” under New York law. The court detailed the testimony of each witness, and concluded that the two witnesses presented at trial were the “most credible among the possible alibi witnesses.” Rosario v. Ercole, 582 F.Supp.2d 541, 550 (S.D.N.Y.2008). The court also determined that the testimony of several of the proffered alibi witnesses could have undermined Rosario’s alibi defense in the eyes of the jury.
The state court noted that Rosario’s right to effective assistance of counsel was guaranteed by both the federal and state constitutions. The court contrasted the federal standard set forth in Strickland with the New York standard employed under the state constitution. After a lengthy analysis under the New York constitutional standard, the court concluded that Rosario had received “meaningful representation” as required by New York’s constitution. The court also concluded that the government’s ease was “strong”; that the prospective alibi witnesses “were, for the most part, questionable and certainly not as persuasive as the two witnesses who did testify”; and that the verdict was “unimpeached, and ‘amply supported by the evidence.’ ”[2]
Rosario filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York (Castel, J.). Rosario v. Ercole, 582 F.Supp.2d 541 (S.D.N.Y.2008). The district court requested a report and recommendation from a magistrate judge (Pitman, M.J.). Id. at 545. The magistrate judge and the district court concluded that counsels’ performance was in fact deficient under Strickland. Id. at 551. However, both determined that the state court’s decision to deny Rosario’s motion to vacate was not an unreasonable application of, nor contrary to, clearly established federal law. Id. at 552-53. This appeal followed.
Discussion
Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), a federal court may only grant a writ of habeas corpus for a claim that has been adjudicated on the merits by a state court if the adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).
Rosario argues that the state court decision denying his claim for ineffective assistance of counsel was both an unreasonable application of, and contrary to, the clearly established federal standard under the first subsection of § 2254(d). Because the state court adjudicated the merits of his claim, Rosario must prove that the state court either identified the federal standard for ineffective assistance but applied that standard in an objectively unreasonably way, or that the state applied a rule that contradicts the federal standard. Lockyer v. Andrade, 538 U.S. 63, 73, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d *123 144 (2003); Williams v. Taylor, 529 U.S. 362, 387-89, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We review the district court’s denial of the writ de novo. Jones v. West, 555 F.3d 90, 95 (2d Cir.2009).
Rosario argues that the state court ran afoul of federal law when it concluded that he had received effective representation. In Rosario’s view, counsels’ failure to investigate Rosario’s alibi witnesses and documentary evidence was a violation of his constitutional right to the effective assistance of counsel, and any conclusion otherwise misapprehends clearly established law.
In Williams v. Taylor, the Supreme Court determined that Strickland v. Washington, the seminal ease defining the contours of the right to effective assistance of counsel, qualified as “clearly established law” for purposes of AEDPA. 529 U.S. at 390-91, 120 S.Ct. 1495. The Strickland test for ineffective assistance has two necessary components: the defendant must establish both that his attorney was ineffective and that the attorney’s errors resulted in prejudice to the defendant. Id.; see also Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is ineffective when her efforts fall “ ‘below an objective standard of reasonableness.’ ” Williams, 529 U.S. at 390-91, 120 S.Ct. 1495 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). A defendant satisfies the prejudice prong by proving that “ ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’” Id. at 391, 104 S.Ct. 2052 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
When a federal court reviews a state court decision under § 2254, “[t]he question is not whether a federal court believes the state court’s determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold.” Knowles v. Mirzayance, — U.S. -, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted). The Strickland standard itself is a “general standard,” meaning its application to a specific case requires “a substantial element of judgment” on the part of the state court. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); accord Knowles, 129 S.Ct. at 1420. Thus, state courts are granted “even more latitude to reasonably determine that a defendant has not satisfied that standard.” Knowles, 129 S.Ct. at 1420. In order to prevail, a petitioner must overcome that substantial deference and establish that the state court’s decision on ineffective assistance was contrary to, or an unreasonable application of, Strickland.
To be “contrary to” clearly established law, a state court must reach a conclusion of law antithetical to a conclusion of law by the Supreme Court, or decide a case differently than the Supreme Court has when the two cases have “materially indistinguishable facts.” Williams, 529 U.S. at 412-13, 120 S.Ct. 1495. The state court examined Rosario’s claims under New York’s constitutional standard for ineffective assistance. New York’s constitution, like the U.S. Constitution, affords its citizens with the right to competent representation by an attorney. See U.S. Const, amend. VI; N.Y. Const, art. I, § 6; see also People v. Baldi, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981). However, as noted by the state court, New York’s test for ineffective assistance of counsel under the state constitution differs from the federal Strickland *124 standard. The first prong of the New York test is the same as the federal test; a defendant must show that his attorney’s performance fell below an objective standard of reasonableness. People v. Turner, 5 N.Y.3d 476, 480, 806 N.Y.S.2d 154, 840 N.E.2d 123 (2005). The difference arises in the second prong of the Strickland test. Id. In New York, courts need not find that counsel’s inadequate efforts resulted in a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Instead, the “question is whether the attorney’s conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.” People v. Benevento, 91 N.Y.2d 708, 713, 674 N.Y.S.2d 629, 697 N.E.2d 584 (1998) (internal quotation marks omitted). Thus, under New York law the focus of the inquiry is ultimately whether the error affected the “fairness of the process as a whole.” Id. at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584. The efficacy of the attorney’s efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was “meaningful representation.” Baldi, 54 N.Y.2d at 147, 444 N.Y.S.2d 893, 429 N.E.2d 400.
The New York Court of Appeals clearly views the New York constitutional standard as more generous toward defendants than Strickland. Turner, 5 N.Y.3d at 480, 806 N.Y.S.2d 154, 840 N.E.2d 123 (“Our ineffective assistance cases have departed from the second (‘but for’) prong of Strickland, adopting a rule somewhat more favorable to defendants.” (citing cases)). To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel’s errors; a defendant need only demonstrate that he was deprived of a fair trial overall. People v. Caban, 5 N.Y.3d 143, 155-56, 800 N.Y.S.2d 70, 833 N.E.2d 213 (2005). A single error by otherwise competent counsel may meet this standard if that error compromised the integrity of the trial as a whole. Turner, 5 N.Y.3d at 480, 806 N.Y.S.2d 154, 840 N.E.2d 123.
For our part, we have recognized that the New York “meaningful representation” standard is not contrary to the Strickland standard. Eze v. Senkowski, 321 F.3d 110, 123-24 (2d Cir.2003); Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir.2001). However, some of our colleagues have cautioned that there may be applications of the New York standard that could be in tension with the prejudice standard in Strickland. Henry v. Poole, 409 F.3d 48, 70-71 (2d Cir.2005). The primary source of this consternation is a sentence from a New York Court of Appeals decision, Benevento, which notes that “whether defendant would have been acquitted of the charges but for counsel’s errors is relevant, but not dispositive under the State constitutional guarantee of effective assistance of counsel.” 91 N.Y.2d at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584. Of course, under Strickland, if a defendant would have been acquitted but for counsel’s errors, that fact is both relevant and dispositive because it creates more than a reasonable probability of a different outcome and thus soundly passes the prejudice prong of the test. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
The problem is that focusing solely on this sentence leads one to ignore the context in which it was written. Benevento recognized that, like Strickland, “a claim of ineffective assistance of counsel will be sustained only when it is shown that counsel partook ‘an inexplicably prejudicial Course.’ ” Benevento, 91 N.Y.2d at 713, 674 N.Y.S.2d 629, 697 N.E.2d 584 (quoting People v. Zaborski, 59 N.Y.2d 863, 865, 465 N.Y.S.2d 927, 452 N.E.2d *125 1255 (1983)). However, the New York Court of Appeals carefully noted that, pri- or to Strickland, New York had “developed a somewhat different test for ineffective assistance of counsel under article I, § 6 of the New York Constitution from that employed by the Supreme Court in applying the Sixth Amendment.” Id. (quoting People v. Claudio, 83 N.Y.2d 76, 79, 607 N.Y.S.2d 912, 629 N.E.2d 384 (1993)). Benevento explained that in New York “ ‘prejudice’ is examined more generally in the context of whether defendant received meaningful representation.” Id. Because the concept of prejudice in New York’s ineffective assistance of counsel jurisprudence focuses on the quality of representation provided and not simply the “but for” causation chain, New York has “refused to apply the harmless error doctrine in cases involving substantiated claims of ineffective assistance.” Id. at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 (citing cases). In New York, even in the absence of a showing that but for counsel’s errors the outcome would be different, a defendant may still have an ineffective assistance claim under New York’s constitution. Even if the errors are harmless in the sense that the outcome would remain the same, a defendant may still meet the New York prejudice standard by demonstrating that the proceedings were fundamentally unfair. See People v. Stultz, 2 N.Y.3d 277, 283-84, 778 N.Y.S.2d 431, 810 N.E.2d 883 (2004). This is not a novel view — New York state courts have repeatedly asserted that the New York standard is, in practice and in intent, more generous to defendants than the federal standard. See, e.g., People v. Ozuna, 7 N.Y.3d 913, 915, 828 N.Y.S.2d 275, 861 N.E.2d 90 (2006); Turner, 5 N.Y.3d at 480, 806 N.Y.S.2d 154, 840 N.E.2d 123 (collecting cases). Federal courts faced with the New York standard should view it as such. The concern this Court expressed in dicta in Henry v. Poole about the New York state standard was misplaced. The Henry panel wrote, “we find it difficult to view so much of the New York rule as holds that ‘whether defendant would have been acquitted of the charges but for counsel’s errors is ... not dispositive, ’ as not ‘contrary to’ the prejudice ' standard established by Strickland.” 409 F.3d at 71 (internal citation omitted). However, it is hard to envision a scenario where an error that meets the prejudice prong of Strickland would not also affect the fundamental fairness of the proceeding. The very opinion from which the troublesome phrase was drawn — Benevento—affirmatively stated that even a “harmless error” could undermine the fairness of the process in such a way that violates the state’s constitutional guarantee of effective assistance. See Benevento, 91 N.Y.2d at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584. What case, then, could present the converse, an error so egregious that it most likely influenced the outcome of the trial, but did not cripple the fundamental fairness of the proceedings? We can think of none. Fundamental fairness analysis by its nature must always encompass prejudice.
The New York standard is not without its problems. In defining prejudice to include “the context of whether defendant received meaningful representation,” Benevento, 91 N.Y.2d at 713, 674 N.Y.S.2d 629, 697 N.E.2d 584, New York has, to some degree, combined the two prongs of Strickland. Prejudice to the defendant, meaning a reasonable possibility of a different outcome, is but one factor of determining if the defendant had meaningful representation. New York courts look at the effect of the attorney’s shortcomings as part of the equation in deciding if the defendant received the benefit of competent counsel. This approach, and the language of Benevento, creates a danger that *126 some courts might misunderstand the New York standard and look past a prejudicial error as long as counsel conducted himself in a way that bespoke of general competency throughout the trial. That would produce an absurd result inconsistent with New York constitutional jurisprudence and the mandates of Strickland. Properly applied, however, this standard is not contrary to Strickland and, in the case before us, the court properly applied the standard.
The trial court’s decision[3] addressing the ineffective assistance of counsel claim did recite the troublesome phrase from Benevento, and added a footnote that read: “The federal standard for allegations of ineffective assistance of counsel, which was set forth in Strickland v. Washington, requires a showing that the attorney’s performance was deficient and that, but for the attorneys[’] errors, the result of the proceeding would have been different, was expressly rejected in this case.” (internal quotation marks and citation omitted). Rosario argues that this alone is enough to establish his claim under Federal law. But as noted above, New York’s rejection of Strickland was in the context of recognizing a state constitutional right that is more protective of a defendant’s right to an effective attorney, and not because Strickland is too generous.
As the Henry panel recognized, this Court has repeatedly held that application of the New York state standard is not contrary to Strickland. See, e.g., Eze, 321 F.3d at 123-24. And, as the Henry panel also recognized, “in the absence of a contrary decision by this Court en banc, or an intervening Supreme Court decision, we are bound to follow the precedents ... that the N.Y. Court of Appeals standard is not ‘contrary to’ Strickland." Henry, 409 F.3d at 70. We emphasize again that the New York state standard for ineffective assistance of counsel is not contrary to Strickland.
The only avenue of reprieve available to Rosario then is to establish that the state court unreasonably applied Strickland. A state court “unreasonably applies” clearly established law when it identifies the correct legal principle from Supreme Court jurisprudence, but unreasonably applies the principle to the case before it. Williams, 529 U.S. at 412-13, 120 S.Ct. 1495.
In order to prevail, Rosario must first satisfy the prongs of Strickland on de novo review of the merits. See Henry, 409 F.3d at 67. The magistrate judge and the district court concluded that Rosario had done so. We see no need to quibble with those conclusions because, like the magistrate judge and the district court judge, we agree that the New York court’s application of Strickland — albeit in the terms of New York cases — was not an unreasonable application of the federal standard.
For us to find that the state court unreasonably applied Strickland, we must uncover an “increment of incorrectness beyond error.” Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000). The increment need not be great, but simply disagreeing with the outcome is insufficient. Id.; see also Williams, 529 U.S. at 410, 120 S.Ct. 1495. This is so even if, as here, we conclude both prongs of Strickland have been met. “[A] state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel must show more than simply that he meets the Strickland stan *127 dard.... [T]he state court’s decision rejecting his claim is to be reviewed under a more deferential standard than simply whether that decision was correct.” Henry, 409 F.3d at 67.
As noted above, the state court conducted an extensive hearing in response to Rosario’s motion to vacate his conviction under New York Criminal Procedure Law § 440.10 due to ineffective assistance of counsel. The hearing lasted over a month. After the hearing, Justice Davidowitz issued a lengthy decision, reviewing the evidence presented and detailing his conclusions on Rosario’s claims. While we may disagree with Justice Davidowitz’s findings (and indeed our dissenting colleague does), we cannot say that he unreasonably applied federal law.
As the district court stated: “[t]hough not delivered in Strickland terminology, the state court opinion ruled that 1.) Rosario was effectively represented in his alibi defense, and 2.) that his representation did not undermine confidence in the jury’s verdict.” Rosario, 582 F.Supp.2d at 553. Examining both the efforts of counsel and the alibi witnesses presented, Justice Davidowitz concluded: “By any standard, Ms. Hartsfield and Mr. Kaiser represented defendant in a thoroughly professional, competent, and dedicated fashion and not in accord with the issues of ineffectiveness.... [T]he errors or omissions suggested by the defendant do not alter this finding or rise to that level.” (emphasis added). Justice Davidowitz noted that “an investigation was conducted ... and, most importantly, a credible alibi defense was presented to the jury.” He found that the two witnesses presented at trial were Rosario’s best alibi witnesses. Justice Davidowitz labeled Kaiser’s decision not to present the police reports detailing Collazo’s fight a “perfectly reasonable and appropriate” strategy. To put it in terms of Strickland, Justice Davidowitz did not find that the performance of counsel was objectively unreasonable.
Justice Davidowitz then examined in great detail the testimony of the alibi witnesses presented at the hearing. The court noted that the two alibi witnesses that were presented at trial “had the best reason for remembering why defendant was present in Florida on June 19[,] 1996 — the birth of their son — an event that was more relevant for .them than the events relied upon by the other witnesses.” He expressed skepticism as to the probative value of the witnesses presented at the hearing, calling the evidence “in some cases questionable and in others [raising] issues which could have created questions for a deliberating jury. For example, two of the witnesses — Lisette Rivero[] and Denise Hernandez — could not say where the defendant was on June 19 and 20.” The judge “studied closely” the alibi witnesses presented, at the hearing, and concluded they were “for the most part, questionable and certainly not as persuasive as the two witnesses who did testify, and were rejected by the jury” and the.testimony they would have provided was “largely” cumulative. In spite of the failure to call the alibi witnesses, .Justice Davidowitz determined “this jury verdict was unimpeached and amply supported by the evidence.” (internal quotation marks omitted and emphasis added). Translated into the language of Strickland, Justice Davidowitz concluded that there was not a reasonable probability that the outcome of the trial would be different but for counsel’s errors.
Justice Davidowitz conducted a thorough hearing, assessing the -credibility of the potential witnesses first-hand. - He concluded that the two witnesses called at trial were the best witnesses to represent Rosario’s alibi defense, and that the other witnesses were “questionable and certainly *128 not as persuasive as the two witnesses who did testify, and were rejected by the jury.” He considered the prejudicial effect of the errors, and concluded that the outcome of the trial would not have been different but for those errors — the guilty verdict, in his words, remained “unimpeached.” He adhered to the New York state standard and found counsel to have been effective. Whether our own cold reading of the record would lead us to this conclusion is of no moment; we must presume the state court’s findings of fact are correct and can only be rebutted by clear and convincing evidence otherwise. Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir.2006) (citing 28 U.S.C. § 2254(e)).
Justice Davidowitz’s analysis need not employ the language of a federal court’s de novo review in order to pass AEDPA muster. See Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). While he did not explicitly review the evidence under the Strickland standard, the import was the same. Conflating the two prongs of Strickland does not violate AEDPA — different is riot per se unreasonable. Here, Justice Davidowitz did not find that counsel’s performance was objectively unreasonable, nor did he find that the fundamental fairness of the trial was harmed by counsel’s errors. On this record, we cannot say that the state court unreasonably applied the tenets of Strickland. Therefore, consistent with the standards of AEDPA, we agree with the district court that the writ must be denied.
We have reviewed Rosario’s additional arguments and find them to be without merit.
Conclusion
The district court’s judgment of October 23, 2008, denying the petition' for the writ of habeas corpus is hereby Affirmed.
Judge STRAUB concurs in part and dissents in part in a separate opinion.

. The relevant part of the New York statute governing a motion to vacate a judgment reads: "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: ... (h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." N.Y.Crim. Proc. Law § 440.10(1).

. Upon appeal, the New York Appellate Division, First Department, did not address the ineffective assistance claim. People v. Rosario, 288 A.D.2d 142, 733 N.Y.S.2d 405 (1st Dep’t 2001). The New York Court of Appeals denied leave to appeal. People v. Rosario, 97 N.Y.2d 760, 760, 742 N.Y.S.2d 621, 769 N.E.2d 367 (2002) (Ciparick, J.).

. Because the state court appeals did not address the ineffective assistance of counsel claim, we look to the trial court's analysis of the issue. See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).