OPINION OF THE COURT
Richard Lee Price, J.
On October 25, 2005, judgment was entered against the defendant in Supreme Court, Bronx County (Davidowitz, J.), convicting him upon his plea of guilty to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor. Defendant was sentenced to a term of time served. No appeal was taken.
By motion submitted October 15, 2012, defendant moves to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10 (1) (h). By decision dated December 12, 2012, this court denied defendant’s motion. This expands that decision.
I. Background and Procedural History
Defendant, a native citizen of the Dominican Republic, entered the United States on February 14, 1995, and was designated a lawful resident on a conditional basis. On June 14, 2001, those conditions were removed, and he was granted lawful permanent resident status.
On April 30, 2005, an undercover police officer observed defendant seated behind the steering wheel of a white Mitsubishi Montero while an individual identified as Vincent Reyes engaged *403 in a brief conversation with a separately apprehended defendant. Reyes entered the vehicle through the front passenger side, remained there for several seconds, and then exited. Reyes subsequently handed several small objects to the separately apprehended defendant in exchange for a quantity of United States currency. Upon the arrest of all three individuals, officers recovered four ziplock bags containing a quantity of crack cocaine from both defendant’s and Reyes’ left front pants pockets, and two clear ziplock bags containing a quantity of cocaine from the separately apprehended individual’s right front pants pocket. Defendant and Reyes were both charged with one count of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), and one count of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]).
On October 25, 2005, defendant, through his attorney, Os-waldo Gonzalez (plea counsel), entered a guilty plea as noted above. Mr. Gonzalez also represented the codefendant, Vincent Reyes. Consequently, the court conducted a Gomberg inquiry to determine whether the defendant understood that he had the right to separate counsel. Although the defendant stated that he wanted Mr. Gonzalez to represent him, he now claims that he was unclear as to what the court asked him during the Gomberg inquiry. Mr. Gonzalez, for his part, represented that since both defendants were observed independently in possession of narcotics, no conflict existed. Consequently, the court permitted defense counsel to enter guilty pleas on behalf of both defendants. The defendant was allocuted upon his plea; sentence was immediately imposed.
On November 3, 2011, defendant was convicted in New York County (under indictment No. 4802-2011) of one count of conspiracy in the second degree and four counts of criminally using drug paraphernalia. Defendant was sentenced to three years’ incarceration on the conspiracy count and time served on the misdemeanor counts. Defendant subsequently appealed this conviction, which is currently pending.
On January 30, 2012, the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), issued defendant a notice to appear (NTA) for removal proceedings. The NTA alleges he is subject to removal from the United States pursuant to section 237 (a) (2) (B) (i) of the Immigration and Nationality Act (8 USC § 1227 [a] [2] [B] [i]) because after being admitted to the United States, he was
*404 “convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one’s own use of 30 grams or less of marijuana” (see defendant’s exhibit B).[1]
On or about April 30, 2012, defendant was transferred to immigration custody, and removal proceedings based on his October 25, 2005 conviction commenced. Although a deportation order against the defendant was issued, ICE subsequently cancelled it.
Defendant then moved, through counsel, to vacate the 2005 judgment of conviction pursuant to CPL 440.10 (1) (h) on the grounds that the judgment was obtained in violation of his Sixth Amendment right to effective assistance of counsel. Specifically, defendant claims that: (1) plea counsel failed to advise him that entering a guilty plea would subject him to adverse immigration consequences on the basis of Padilla v Kentucky (559 US 356, —, 130 S Ct 1473, 1483 [2010]); (2) neither the court nor the Assistant District Attorney informed him that his guilty plea could negatively impact his immigration status; (3) plea counsel created a conflict of interest by providing concurrent representation to the codefendant; and (4) he did not fully understand the consequences of consenting to prosecution by superior court information. Defendant argues, therefore, that his plea was unlawfully entered because it was not knowing, voluntary, and intelligent.
The People, in opposing defendant’s motion, argue defendant failed to satisfy his burden of establishing that plea counsel’s performance was deficient, or that he suffered any prejudice as a result of the purported deficiency. Regarding his conflict of interest claim, the People argue it is record-based and as such, may only be raised on direct appeal. Moreover, they note that the record indicates both defendants voluntarily consented to plea counsel’s representation, and that any potential conflict did not actually render defendant’s plea involuntary.
*405 In his reply dated October 9, 2012, defendant petitioned this court for an expeditious decision because the deadline for the immigration court to consider this court’s determination was October 26, 2012. Although this court does not, nor cannot, regularly entertain rocket docket requests, it nevertheless directed the parties to appear for oral argument on October 15, 2012.
On October 15, 2012, this court heard the parties’ respective arguments. During oral argument, defense counsel noted that ICE had cancelled defendant’s deportation order. Counsel also indicated that defendant’s November 3, 2011 conviction for conspiracy in the second degree and criminally using drug paraphernalia (four counts) was pending appeal. Counsel then acknowledged that she sought an expeditious decision because if granted, he could retract the cancellation of removal order. This, he hoped, would enable him to preserve his sole cancellation opportunity should deportation proceedings be commenced as a result of his 2011 conviction.
II. Criminal Procedure Law § 440.10 (2) (c)
The People argue that defendant’s motion must be summarily denied pursuant to CPL 440.10 (2) (c) because his claim is record-based and should have been raised on direct appeal. This court disagrees. CPL 440.10 (2) (c) provides as follows:
“2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: . . .
“(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant’s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.”
While issues regarding sufficiency of a plea colloquy are by nature record-based and must be brought on direct appeal, a claim of ineffective assistance of counsel is usually raised through a collateral attack. The avenue for pursuing such claims is CPL 440.10, which provides that “[a]t any time after the entry of a judgment, the court in which it was entered may, *406 upon motion of the defendant, vacate such judgment” (CPL 440.10 [1]). A judgment may be vacated when “[t]he judgment was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor” (CPL 440.10 [1] [b]), or in situations when “[i]mproper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom” (CPL 440.10 [1] [f]).
It is well established that “in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by [a] collateral or post-conviction proceeding brought under CPL 440.10” (People v Brown, 45 NY2d 852, 853-854 [1978]; see also Cruz v Berbary, 456 F Supp 2d 410, 414 [2006] [“Denial of a C.P.L. § 440.10 motion, pursuant to § 440.10(2)(c), will not always be appropriate in the ineffective assistance context, such as when the facts supporting the instance of ineffective assistance of counsel appeared outside the record”]).
Indeed, the difficulty with reviewing ineffective assistance claims is that they are subject to reasonable disagreement as to whether or not they are reviewable on the record; the reason being they are often in part record-based. As the Supreme Court explained, “[w]hen an [ineffectiveness] claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose” (Massaro v United States, 538 US 500, 504-505 [2003]). The trial court is “the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial” (Massaro at 505).
Though the general purpose of CPL 440.10 (2) (c) is to prohibit a defendant from using CPL 440.10 as a substitute for direct appeal, such a procedural bar is typically ill suited to ineffective assistance of counsel claims. Defendants are therefore permitted to make such motions because the trial records will often be insufficient and need to be supplemented (see People v Harris, 109 AD2d 351, 360 [2d Dept 1985]). Thus, a court’s obligation to address the merits of an ineffective assistance claim may obviate consideration of a procedural bar (Horton v Ercole, 557 F Supp 2d 308, 316 n 5 [2008]; see Greiner v Wells, 417 F3d 305, 317 n 14 [2d Cir 2005]).
*407 Here, the plea record reflects that the court clearly inquired of the defendant whether or not he understood his right to a separate attorney and the potential conflict of joint representation. Specifically, the court stated,
“I’m told by Mr. Gonzalez that he represents both of you. That’s all right as long as you both understand that you have the right, each of you, to have a separate attorney representing you to make sure that there is no conflict whatsoever in his representation of both of you because your interests with respect to these matters might be different. Do you understand that, Mr. Santos?”
In response, the defendant answered, “yes” (see plea rec at 2).
After reiterating the inquiry, the court asked defendant to state, in his own words, whether or not he wanted Mr. Gonzalez as his counsel, to which he replied, “I don’t know what he’s going to do.” The defendant then had a private conversation with Mr. Gonzalez, and subsequently stated, “I would like for him to represent me” (see plea rec at 3). The clarity of the court’s allocution aside, the record contains nothing of that conversation or any explanation to defendant about the implications of joint representation. Accordingly, to the extent defendant’s claim incorporates communications not reflected in the record, defendant’s motion is not procedurally barred.
III. Defendant’s Burden to Allege Issues of Fact
CPL 440.30 (4) provides:
“Upon considering the merits of [a CPL 440.10] motion, the court may deny it without conducting a hearing if . . .
“(b) [t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one; or . . .
“(d) [a]n allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true.”
A judgment of conviction is presumed valid, and a defendant moving to vacate his conviction bears the “burden of com *408 ing forward with allegations sufficient to create an issue of fact” (People v Session, 34 NY2d 254, 255-256 [1974]; People v Braun, 167 AD2d 164, 165 [1st Dept 1990]). The People maintain that defendant’s claim should be denied because his moving papers do not contain sufficient allegations tending to substantiate it (see CPL 440.30 [4] [b], [d]). The defendant did not provide an affirmation from his alleged ineffective attorney; therefore, he failed to substantiate his assertion that defense counsel failed to inform him of potential deportation consequences. In support of their contention, the People rely on People v Braun (167 AD2d 164 [1st Dept 1990]). Braun, however, merely held as Session: that judgments of conviction enjoy a “presumptive regularity” and it is defendant’s “burden of coming forward with allegations which create an issue of fact” (Braun at 165).
The absence of an attorney’s affidavit, however, by itself, is not dispositive (see People v Morales, 58 NY2d 1008 [1983]). In fact, an affidavit of counsel is not required where the defendant raises an ineffective assistance claim based on alleged error or omission of trial counsel (People v Radcliffe, 298 AD2d 533 [2d Dept 2002]). “The defendant’s application is adverse and hostile to his trial attorney. To require the defendant to secure an affidavit, or explain his failure to do so, is wasteful and unnecessary” (Radcliffe at 534).
Here, defendant provided a personal affidavit to support his allegations. Such allegations, if established, “could entitle the defendant to the relief sought” (People v Gonzalez, 160 AD2d 724, 725 [2d Dept 1990]; People v Ferreras, 70 NY2d 630, 631 [1987]). Defendant would not be entitled to the relief sought if there was no reasonable possibility that the allegations were true (CPL 440.30 [4] [d] [ii]). Although it is true that the plea allocution reflects no indication that either Mr. Gonzalez or the court advised defendant of the potential deportation consequences associated with entering a guilty plea, this by itself does not establish a sufficient possibility that defendant’s allegations are true. Nor is such a sufficient possibility established, as counsel argues, from Mr. Gonzalez’s unresponsiveness to counsel’s repeated requests for defendant’s file.[2]
*409 IV. Padilla’s Retroactive Effect
In Padilla (559 US 356), the Supreme Court held that the Sixth Amendment requires defense attorneys to advise their clients of the immigration consequences arising from a guilty plea. Consequently failure to advise a defendant about deportation causes ineffective assistance of counsel, and is grounds for a court to vacate this judgment of conviction.
Until recently, courts have struggled with the question as to whether or not the ruling in Padilla applies retroactively to defendants whose convictions became final before the Padilla decision was announced. The matter of retroactive effect is determined by the Supreme Court’s ruling in Teague v Lane (489 US 288 [1989]). The Court established that an application of a well-established constitutional doctrine to new facts constitutes an application of an “old rule” and must be applied retroactively (People v Eastman, 85 NY2d 265, 275 [1995]). However, when a court “breaks new ground or imposes a new [constitutional] obligation,” it creates a “new rule” which, unless an exception to the rule, will not have retrospective effect (id.; Teague at 301, 310).
The First Department in People v Baret (99 AD3d 408, 409 [1st Dept 2012]) concluded that “Padilla did not establish a ‘new’ rule under Teaguel, but] rather . . . followed from the clearly established principles.” Padilla was therefore deemed retroactive until at least 1996, when the Illegal Immigration Reform and Immigrant Responsibility Act (Pub L 104-208, 110 US Stat 3009 [104th Cong, 2d Sess, Sept. 30, 1996]) was enacted (Baret at 409). However, since that time, the Supreme Court in Chaidez v United States (568 US —, 133 S Ct 1103 [2013]) clarified that the holding in Padilla amounted to a new rule. Therefore, under the guidelines set out in Teague, the ruling does not apply retroactively; “defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding” (Chaidez, 568 US at —, 133 S Ct at 1113). Thus, Baret has been effectively overruled, denying any retroactive Padilla effect.
Here, the defendant moves to vacate his 2005 judgment of conviction, entered five years prior to the 2010 Padilla ruling. *410 Because Chaidez establishes that Padilla affords no retroactive effect, the defendant may not benefit from its ruling. Having established that defendant’s conviction became final before 2010, then, it is unnecessary for this court to determine whether defendant’s motion should be granted. Nevertheless, since the Chaidez ruling does not necessarily preclude New York from continuing to entertain such applications, this court will consider the merits of defendant’s Padilla claim.
V Ineffective Assistance of Counsel
Assuming that defendant satisfied his burden under CPL 440.30 (4), his ineffective assistance of counsel claim is without merit. In order to establish ineffective assistance of counsel under the federal standard, a defendant must demonstrate both that counsel’s representation fell “below an objective standard of reasonableness” (Strickland v Washington, 466 US 668, 688 [1984]) as judged by the prevailing norms of practice, and a showing of prejudice: whether or not, “but for counsel’s unprofessional errors, the result of the proceeding would have been different” (Strickland at 694).
Since the performance and prejudice elements set forth in Strickland may be addressed in either order, “a court need not determine whether counsel’s performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies” (Strickland at 697). “If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed” (Strickland at 697). Then, only after determining that the defendant has been prejudiced, must the court consider counsel’s performance.
A. Prejudice
1. Federal Standard
Defendant’s motion is based on the assertion that defense counsel’s failure to advise him of potential immigration consequences associated with pleading guilty was per se ineffective assistance. As such, he must establish that counsel’s allegedly deficient conduct prejudiced him. To do so in a plea bargain context, “the defendant must show that there is a reasonable probability that, but for counsel’s errors, [s]he would not have pleaded guilty and would have insisted on going to trial” (Hill v Lockhart, 474 US 52, 59 [1985]). That is, “to obtain relief . . . , a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances” (Padilla, 559 US at —, 130 S Ct at 1485).
*411 In Padilla, the Court imposed an affirmative duty on defense counsel to provide accurate advice to a noncitizen defendant concerning the potential immigration consequences of pleading guilty (Padilla, 559 US 356). Padilla gives some guidance as to the scope and nature of legal advice that courts should require of practitioners in the immigration context. Padilla, a lawful permanent resident in the United States for over 40 years, pleaded guilty to drug-distribution charges in Kentucky and faced deportation as a consequence of his conviction. Padilla claimed that his counsel “not only failed to advise him of this consequence prior to his entering the plea, but also told him that he did not have to worry about immigration status since he had been in the country so long” (Padilla, 559 US at —, 130 S Ct at 1478 [internal quotation marks omitted]). The Court, stating that it was “not a hard case” to conclude counsel’s performance was constitutionally deficient, found that “[t]he consequences of Padilla’s plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel’s advice was incorrect” (Padilla, 559 US at —, 130 S Ct at 1483). Thus, at least where the “terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence[s] for . . . conviction,” constitutionally, competent counsel must advise a defendant that his conviction makes him subject to mandatory deportation (Padilla, 559 US at —, 130 S Ct at 1483).
Here, as in Padilla, defendant pleaded guilty to a drug offense in 2005, which made him automatically removable under title 8, section 1182 (a) (2) (A) (i) (II) of the United States Code. Pursuant to that section, an alien is inadmissible, and hence removable, from the United States “who admits committing acts which constitute the essential elements of . . . any law or regulation of a State . . . relating to a controlled substance” (8 USC § 1182 [a] [2] [A] [i] [II]). Accordingly, as in Padilla, the “terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence[s] for . . . conviction” (559 US at —, 130 S Ct at 1483). Defense counsel, therefore, had an affirmative duty to inform him of possible deportation as a consequence of pleading guilty.
Assuming Mr. Gonzalez did not perform such duty, however, defendant suffered no prejudice. First, Mr. Gonzalez negotiated a favorable non-incarceratory plea agreement, sparing defendant from the exposure of a lengthy prison term had he been *412 convicted after a trial. And an acquittal would by no means have been assured. The People’s case against the defendant was strong: an undercover officer who witnessed the exchange of crack cocaine and currency between the defendant, codefendant (Reyes), and a third party, along with four ziplock bags of crack cocaine recovered from defendant’s left front pants pocket by the arresting officers. Defendant would therefore be hard-pressed to “convince th[is] court that a decision to reject the plea bargain would have been rational” had he been fully informed of the immigration consequences of his plea (Padilla, 559 US at —, 130 S Ct at 1485). In other words, considering the strength of the case against defendant, even if counsel had advised defendant to plead guilty without informing him of the potential immigration consequences of doing so, it would not constitute ineffective assistance of counsel.
Perhaps more significantly, the defendant fails to establish he was prejudiced by Mr. Gonzalez’s alleged failure because Padilla demands that he “now face[ ] deportation” as a result of the challenged conviction (559 US at —, 130 S Ct at 1477). As previously noted, defendant’s removal proceedings were cancelled, and he is therefore not now facing deportation. Such cancellation, then, effectively nullifies any prejudice argument because “it is wasteful to commit judicial resources to immigration cases when circumstances suggest that, if the Government prevails, it is unlikely to promptly effect the petitioner’s removal” (In re Immigration Petitions for Review Pending in U.S. Ct. of Appeals for Second Circuit, 702 F3d 160, 160 [2d Cir 2012]). Further, review of a final order of removal “is moot because we can provide no effective relief from a removal order that has already been vacated” (Fuller v Board of Immigration Appeals, 702 F3d 83, 84 [2d Cir 2012]).
Defendant argues otherwise. Counsel wants this court to embrace her novel approach that since the deportation order stemming from his 2005 conviction has been cancelled, vacating that conviction will enable him to retract cancellation of that order, thus preserving his opportunity to seek cancellation of any future deportation order stemming from his 2011 conspiracy conviction. Such creative reasoning, however, contorts the Padilla requirement that a defendant be facing imminent deportation proceedings. As it stands now, deportation proceedings as a consequence of his 2011 conviction are purely merely speculative, and this court can provide no effective relief from that which is hypothetical.
*413 2. New York Standard
Under the New York standard, a defendant is not required to “fully satisfy the prejudice test of Strickland” (People v Caban, 5 NY3d 143, 155 [2005], quoting People v Stultz, 2 NY3d 277, 284 [2004]). As such, the only “question is whether the attorney’s conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial” (People v Benevento, 91 NY2d 708, 713 [1998] [internal quotation marks omitted]). A defendant need not prove that the outcome of the case would have been different but for such errors, rather only that he was deprived of a fair trial overall (Caban, 5 NY3d at 155-156). Perfect representation, therefore, is not required (Benevento, 91 NY2d at 712).
Like the performance prong in Strickland, however, New York law provides that “a defendant must show that his attorney’s performance fell below an objective standard of reasonableness” (Rosario v Ercole, 601 F3d 118, 124 [2d Cir 2010]). Under article I, § 6 of the New York State Constitution, success of an ineffective assistance of counsel claim rests on whether “the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation” (People v Henry, 95 NY2d 563, 565 [2000], quoting People v Baldi, 54 NY2d 137, 147 [1981]). “The sufficiency of defendant’s factual allegations as to prejudice should be evaluated with reference to the face of the pleadings, the context of the motion and defendant’s access to information” (People v McDonald, 1 NY3d 109, 115 [2003]). In the context of a guilty plea, counsel will be deemed to have provided constitutionally effective representation when the defendant “receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel” (People v Ford, 86 NY2d 397, 404 [1995]).
As indicated, defendant avoided an incarceratory sentence specifically because of counsel’s effort in obtaining the disposition that he did. The defendant and his codefendant were originally charged with one count of criminal sale of a controlled substance in the third degree, a class B felony (Penal Law § 220.39 [1]), and one count of criminal possession of a controlled substance in the third degree, also a class B felony (Penal Law § 220.16 [1]). Had defendant opted for a trial and been convicted, he would have been exposed to a maximum of nine years’ imprisonment (see former Penal Law § 70.70 [1], [2] [a] [i]). There is no reasonable possibility that defendant would *414 have risked trial, conviction, an exceptionally long period of incarceration, and subsequent deportation when a mere probationary sentence was available. Defendant simply cannot “convince th[is] court that a decision to reject the plea bargain would have been rational” had he been fully informed of the consequences of his plea (Padilla, 559 US at —, 130 S Ct at 1485). Defendant is, therefore, unable to establish prejudice under either the state or the federal standard.
B. Performance
Having failed to demonstrate prejudice, it is unnecessary for this court to determine whether counsel’s performance fell below an “objective standard of reasonableness” (Strickland, 466 US at 687-688; see Benevento, 91 NY2d 708). In the context of a guilty plea, a defendant receives meaningful representation when he obtains “an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel” (Ford, 86 NY2d at 404). Once a defendant acquires a favorable plea bargain, “it cannot be concluded that defendant was denied effective assistance of counsel” (People v Black, 247 AD2d 238, 238 [1st Dept 1998]).
As noted, the favorable plea arrangement that Mr. Gonzalez procured spared defendant from a lengthy term of incarceration. In light of such an advantageous plea offer, and the sheer lack of evidence of ineffectiveness, defendant undoubtedly received meaningful representation (Ford, 86 NY2d at 404; Black, 247 AD2d at 238). More significantly, defendant’s Padilla claim is not viable because he is not actually facing deportation on either his 2005 or 2011 conviction.
VI. Conclusion
For the reasons stated above, this court finds that while the defendant is not entitled to Padilla relief under Chaidez, he nevertheless received effective assistance of counsel at the proceedings, and that defendant’s plea was voluntary, knowing, and intelligent (see People v Wiggins, 89 NY2d 872 [1996]; Ford, 86 NY2d at 404; see also Strickland, 466 US at 668). That being said, a CPL 440.10 motion is not a game of Monopoly. Drawing from the stack of “Community Chest” arguments hoping to grab a “Get Out of Jail Free” card for future speculative use is no basis to vacate a conviction, let alone to do so expeditiously.
Defendant’s motion to vacate his judgment of conviction pursuant to CPL 440.10 (1) (h) is therefore denied in all respects.

. It should be noted that People’s exhibit 2 is also a notice to appear for removal proceedings. That one, however, is unsigned and dated June 4, 2010. It is entirely unclear why an unsigned NTA was issued at that time or why the People chose to rely upon it, but for purposes of defendant’s motion this court will consider the deportation proceedings against him as having been commenced with the signed NTA dated January 30, 2012.

. Defense counsel indicates that she had a telephone conversation with Mr. Gonzalez on June 1, 2012, regarding whether or not he recalled representing the defendant, and whether or not he remembered advising him of the *409 possible immigration consequences (see defendant’s reply affirmation at 2). During that conversation, counsel requested that Mr. Gonzalez copy defendant’s case file and forward it to her. According to counsel, Mr. Gonzalez neither provided the file nor responded to any of her subsequent email and voice mail messages (id. at 3).