1. Because Jones has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted for Sandra Dolce, former Superintendent, Or-

ment on the Statutes of Repose (Doc. No. 420) is hereby DENIED.

It is so ordered.

**Shelton C. JONES, Petitioner,**

v.

**Anthony J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1] Respondent.**

**No. 9:14–cv–00405–JKS.**

United States District Court, N.D. New York.

Signed Aug. 26, 2015.

---

leans Correctional Facility. FED.R.CIV.P. 25(c).

108

Shelton C. Jones, Albion, NY, pro se.

Thomas B. Litsky, New York State Attorney General, New York, NY, for Respondent.

## MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

Shelton C. Jones, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Jones was in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Orleans Correctional Facility. The Department of Corrections and Community Supervision's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 11–B–0687) indicates that Jones has received a merit release to supervised parole. Respondent has answered the Petition, and Jones has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On November 13, 2009, Jones was charged with two counts of third-degree criminal sale of a controlled substance arising from his sale of cocaine to a confidential informant ("CI") on November 3 and 5. Jones proceeded to jury trial on the charges on August 4, 2010. At trial, the CI, a 23–year–old heroin and cocaine addict with a criminal history dating back to 2003, and Detective Sergeant Casey Caratelli, who had arranged for the CI to solicit drugs from Jones, testified for the prosecution. After Caratelli's testimony, the court conducted a chambers conference out of the jury's presence where the defense stipulated into evidence People's Exhibit 1 through 6, which included laboratory analysis reports establishing that the substance in the bags the CI gave to Caratelli was cocaine. The prosecution then rested its case, and the defense also rested without presenting evidence.

During closing arguments, the defense argued that the CI's testimony was not credible, and she had the motive and opportunity to falsely accuse Jones to secure favorable treatment in her own pending cases. The defense also argued that Caratelli's search of the CI before and after the buys was inadequate and the evidence was insufficient because, although he could see the CI walk up the stairs to the residence where Jones was staying, Caratelli did not actually see her enter the residence. In response, the prosecutor argued in summation that "drug dealers don't do things on Main Street. They do it in homes, they do it in secret places, cars." The prosecutor further stated:

[The CI] admits to what she's done. She pleads guilty and that's what she's done all the way through her criminal history. She's a thief because she's a drug addict. Drug dealers create these. [Jones] is a classic drug dealer. He's up here from New York City, big flashy car, sets up camp at Camp Street in Sidney, starts selling drugs. [The CI] is credible. You should convict [Jones].

After the trial court gave the standard jury charges, the jury began deliberations. After approximately one hour of deliberations, the jury sent a note asking for the judge's charges, including the definition of the charges. The jury was then called back into the courtroom, and the court again read the legal elements of the two counts of third-degree criminal sale of a controlled substance. After a juror expressed that this was not what the jury was looking for, the court re-read the charge about a full and fair evaluation of the evidence. A juror then asked for "anything for reasonable doubt," and the trial court again charged "guilt beyond a reasonable doubt" and also read the charges regarding the duties of the members of the jury, the different types of evidence, and evaluating the truthfulness and accuracy of each witness.

After the jury had resumed deliberations for approximately 15 minutes, it sent a note stating, "We the jury are unable to come to a unanimous discussion (sic). 5 not guilty; 7 guilty." The jury was then brought back into the courtroom and given the following charge, also known as an *Allen* charge: [2]

Ladies and gentlemen of the jury, I have a note indicating that you have

---

**2.** An *Allen* charge, which derives its name from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in which the Supreme Court approved its use, "is traditionally understood as 'an instruction to con-

sider the point of view of others' when the jury has reached an impasse in its deliberations," *United States v. Wills,* 88 F.3d 704, 716 (9th Cir.1996) (internal citations omitted).

been unable to agree on a verdict. As I told you in my initial instructions, any verdict that you return, whether guilty or not guilty, must be unanimous. If you cannot reach a unanimous agreement, you cannot return a verdict, a new trial will have to be scheduled before a different jury. It is not, however, uncommon for a jury to have difficulty initially in reaching a unanimous verdict, and it is not uncommon for a jury to believe that they will never be able to reach a unanimous verdict but after further deliberations most juries are able to reach a unanimous verdict. And so I will ask you to continue your deliberations.

But before I do, I want to remind you that when this trial began, many prospective jurors were called and questioned, many were excused for one reason or another, but you, ladies and gentlemen, were selected to serve. That means that of all of the prospective jurors called in this case, you were the ones whom both sides expressed confidence in. Both sides were convinced that each of you would be fair and impartial, that each of you would listen carefully to the evidence and to the arguments and to your fellow jurors and work hard to reach a unanimous verdict that was consistent with the law and the evidence. Both sides continue to have confidence in you, as do I.

Ladies and gentlemen, you make up a very good jury. There is no reason to believe that the presentation of this case again would be to a jury that is any more intelligent, reasonable, hard working or fairer than you are. I want to emphasize that I'm not asking any juror to violate his or her conscience or to abandon his or her best judgment. Any verdict that you reach must be a verdict of each juror and not mere acquiescence to the conclusion of others, but I am

asking that you continue deliberating and to resume your deliberations with an open mind.

Start with a fresh slate. Do not be bound by how you felt before, whether you favored conviction or acquittal. Have the courage to be flexible, be willing to change your position if reevaluation of the evidence convinces you that a change is appropriate. Do not, out of pride or stubbornness, adhere to an opinion or conclusion that you no longer believe is correct. Be honest with yourselves and with the other jurors. Listen to the other jurors and evaluate what they have to say. Do not let anything prevent you from carefully considering what they said.

Remember that each of you made a commitment when you became a juror that requires you to reason and deliberate together to reach a fair and a just verdict based only on the evidence.

Of course while a discussion among all jurors may at times be intense, I'm sure you understand that it can and should be respectful of the feelings and opinions of other jurors. I urge that each of you make every possible effort to arrive at a just verdict here. Make certain that the decision that you reach is based solely on the evidence and the law, that it is not influenced or affected by sympathy for or against any individual or for or against either side. Be sure that no baseless speculation, no bias or prejudice for or against any individual enters into your deliberations. If I can help you in any way, whether through a further or repeated read back or through a clarification or restatement of the law, I stand ready to do so.

Again, please make every effort consistent with your conscience and the evidence in this case to harmonize your views and decision in this case with

those of the other jurors. To the best of your ability, I ask you to apply common sense and good judgment.

Finally, ladies and gentlemen, I appreciate that the process of deliberation can be difficult. Frankly, it wasn't intended to be easy, so in accord with your oath, please continue to deliberate with a view toward reaching a verdict.

Neither party objected to the charge as given. After another hour of deliberation, the jury sent a note and was called back into the courtroom. The jury asked for certain testimony of Detective Caratelli, which was read back to them. They then returned to deliberations and, after another 35 minutes, sent a note that read, "We the jury can not (sic) make a decision. 5 guilty; 7 non guilty." The trial court then responded in relevant part:

I've received another note from you indicating that you are still unable to reach a verdict. As I told you in my earlier instructions, any decision that you reach must be a unanimous agreement of all of you. It appears that you have gotten yourselves into a position where at the moment you are unable to agree. It's getting late, so after consultation with the attorneys, I'm going to send you home for the evening and ask you to be back here at 9:30 tomorrow morning. Hopefully, with a chance to think about this case overnight, you will be able to resume your discussions and hopefully come to a unanimous verdict.

If you could do so without violating individual conscience, it is important that a verdict be arrived at, if at all possible. If we cannot get a verdict, then this case will have to go before another jury and there's no reason to suspect that that jury will be any better at this than you were, so I'm going to send you home. 9:30 tomorrow morning. I don't want you to start discussing this

case at all until all 12 of you are present and I have told you to begin. I will be here. The attorneys will be available. The defendant will be available. But you can't begin deliberations until all 12 of you are in the room together.

. . . .

Sleep on the case. Come back in the morning and let's see if after having been rested, that a unanimous verdict can be arrived at.

Shortly after the jury began deliberations the following day, it sent a note seeking clarification as to other portions of Caratelli's testimony, and the relevant parts of the record were then read back to the jury. Before the jury was discharged for further deliberations, the trial court additionally instructed them not to indicate on further notes the breakdown of jury votes. The court stated, "Unless and until the vote is unanimous, we really shouldn't be told how many people are voting one way or the other."

After an additional hour of deliberations, the jury sent a verdict sheet indicating that they had arrived at a verdict, and it was brought back into the courtroom. The jury's verdict was guilty on count 1 and not guilty on count 2. When asked whether he wanted the jury polled, defense counsel responded in the negative, and the jury was excused.

Jones then filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Jones contended that: 1) Detective Caratelli's allegedly inconsistent testimony in another criminal case constituted newly discovered impeachment evidence; 2) his trial counsel was ineffective; 3) his due process rights were violated because the CI's cooperation agreement provided that she would receive a conditional discharge for a pending criminal case contingent upon her gathering evidence against

Jones; and 4) he was actually innocent. By reasoned, unpublished decision issued on November 28, 2011, county court denied the CPL § 440.10 motion, citing CPL § 440.10(2)(b), which requires a court to deny a motion to vacate a judgement when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." Jones' appellate counsel obtained leave to appeal the CPL § 440.10 denial in conjunction with his direct appeal.

Through counsel, Jones appealed his conviction, arguing that: 1) the admission of evidence of his uncharged crimes deprived him of a fair trial; 2) trial counsel was ineffective for a myriad of reasons; 3) sentencing counsel was ineffective because he only met with Jones once and did not contest the accuracy of Jones' pre-sentence report or submit his own; 4) the verdict was against the weight of the evidence and unsupported by legally sufficient evidence; and 5) the *Allen* charge given to the jury was improper and coercive. On December 13, 2012, the Appellate Division affirmed Jones' conviction in a reasoned, published decision. *People v. Jones*, 101 A.D.3d 1241, 955 N.Y.S.2d 694 (2012).

Jones filed a counseled application for leave to appeal the decision to the New York Court of Appeals. In the initial leave application, Jones provided the court with the parties' Appellate Division briefs and relevant appendices but did not specifically address which claims he was seeking to appeal. In a follow-up letter, counsel addressed three issues: 1) whether Jones was denied a fair trial by evidence of uncharged crimes; 2) whether trial counsel was ineffective because he did not object to the testimony concerning uncharged

crimes and did not make any pretrial motions; and 3) whether the evidence was legally sufficient to establish that Jones knowingly sold a narcotic. By order dated May 10, 2013, the Court of Appeals denied leave to appeal without comment. *People v. Jones*, 21 N.Y.3d 944, 968 N.Y.S.2d 6, 990 N.E.2d 140 (N.Y.2013).

Jones then filed a *pro se* motion for a writ of error coram nobis alleging that appellate counsel was ineffective for failing to argue that: 1) trial counsel was ineffective for additional reasons; 2) the verdict was against the weight of the evidence; 3) Jones was denied due process because of the terms of the CI's cooperation agreement; 4) the court's second *Allen* charge was coercive; and 5) the trial court erred because it did not ask the jury prior to the start of deliberations on the second day whether they had obeyed the court's earlier instructions not to discuss the case outside of the jury room and not to look into the case on their own. Jones additionally complained that appellate counsel did not raise on direct appeal any of Jones' *pro se* § 440.10 claims. By order dated September 27, 2013, the Appellate Division summarily denied the coram nobis motion. Jones sought leave to appeal, which the Court of Appeals denied without comment on April 7, 2014. *People v. Jones*, 22 N.Y.3d 1200, 986 N.Y.S.2d 420, 9 N.E.3d 915 (N.Y.2014).

Jones timely filed the *pro se* Petition before this Court on April 2, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Jones raises eight grounds for relief: 1) trial counsel rendered ineffective assistance; 2) the prosecution's cooperation agreement with the CI violated his due process rights; 3) Detective Caratelli offered false testimony at trial; 4) Detective Caratelli gave inconsistent testimony be-

fore the grand jury; 5) the prosecutor committed misconduct by making improper comments during summation; 6) the trial court improperly gave coercive *Allen* charges and failed to read the jury's notes into the record; 7) sentencing counsel rendered ineffective assistance; and 8) appellate counsel rendered ineffective assistance of counsel.

### III. STANDARD OF REVIEW

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 562 U.S. 216, 131 S.Ct. 859, 863, 178 L.Ed.2d 732 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

■ In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir.2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

### IV. DISCUSSION

#### A. Exhaustion

■ Respondent correctly contends that Jones has failed to exhaust the majority of his claims. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365–66, 115 S.Ct. 887. An issue is ex-

hausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005).

▮▮▮ Jones did not raise before the Court of Appeals his claims that his right to due process was violated by the cooperation agreement, Detective Caratelli gave inconsistent testimony at trial and before the grand jury, the trial court erred in giving a coercive *Allen* charge, and the prosecutor committed misconduct. Likewise, although he raised his ineffective trial and sentencing counsel claims on appeal, he did not present them as federal constitutional issues and cited only to state law rather than the federal standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

▮▮▮ Further, his unexhausted claims are procedurally barred. Because these unexhausted claims are based on the record, he cannot bring a motion to vacate as to these claims. NEW YORK CRIMINAL PROCEDURE LAW ("CPL") § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have per-

mitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal...."). Moreover, Jones has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991).

▮▮▮▮▮ "[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) (citation omitted); *see also Grey,* 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), superceded by statute on other grounds, *United States v. Gonzalez–Largo,* No. 07–cv–0014, 2012 WL 3245522, at *2 (D.Nev. Aug.7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Jones does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Jones may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review.[3] *See Ramirez v. Att'y Gen.,* 280 F.3d 87, 94 (2d Cir.2001).

---

**3.** This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. Mc-*

## B. Merits

In any event, even if Jones had fully exhausted his claims, he still would not be entitled to relief on them. For the reasons discussed below, the Court also denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). And as further discussed below, the Court also denies relief on the merits of the claims Jones exhausted in state court.

### 1. *Ineffective Assistance of Counsel* (Claims 1, 7, 8)

Jones first argues that his trial, sentencing, and appellate counsel all rendered ineffective assistance for a variety of reasons.

### a. *Strickland and New York Standards on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland,* a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. at 687, 104 S.Ct. 2052. A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler*

*v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012); *Glover v. United States,* 531 U.S. 198, 203–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Williams,* 529 U.S. at 393–95, 120 S.Ct. 1495. Thus, Jones must show that, with respect to his trial, sentencing and appellate counsel, that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole,* 601 F.3d 118, 123 (2d Cir.2010) (citing *People v. Turner,* 5 N.Y.3d 476, 806 N.Y.S.2d 154, 840 N.E.2d 123 (2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different.

*Donough,* 547 U.S. 198, 209, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006); *Rhines v. Weber,* 544 U.S. 269, 275–76, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Even if Jones could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require

that the Court deny his stay request because, as discussed *infra,* the claims are "plainly meritless." *Rhines,* 544 U.S. at 277, 125 S.Ct. 1528. Likewise, a stay would be futile because, as discussed *supra,* a New York court would deny the claims as procedurally defaulted.

."Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.' " *Id.* at 123 (quoting *People v. Benevento,* 91 N.Y.2d 708, 674 N.Y.S.2d 629, 697 N.E.2d 584, 588 (1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.' " *Id.* (quoting *Benevento,* 674 N.Y.S.2d 629, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.' " *Id.* (quoting *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400, 405 (1981)).

▮ The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner,* 806 N.Y.S.2d 154, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario,* 601 F.3d at 124 (citing *People v. Caban,* 5 N.Y.3d 143, 800 N.Y.S.2d 70, 833 N.E.2d 213, 222 (2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

### b. *Trial Counsel*

Jones argues that retained trial counsel was ineffective because he: 1) failed to make pretrial motions; 2) failed to object to the introduction of evidence of uncharged crimes; 3) did not object to the prosecutor's summation; 4) stipulated to the introduction of the laboratory reports; 5) did not move for a trial order of dismissal; 6) failed to poll the jury; and 7) did not argue that the verdict was inconsistent and repugnant.

▮ The Appellate Division rejected the first five claims on the merits:

[W]e cannot fault counsel's failure to make any pretrial motions because the People voluntarily disclosed all paperwork prior to trial and the police did not obtain any statements or physical evidence from [Jones]. Similarly, the failure to preserve the legal insufficiency argument cannot be considered to be ineffective assistance, inasmuch as a motion to dismiss at the close of the People's proof would likely have been denied in view of the CI's testimony and the laboratory analysis report.

Nor has [Jones] demonstrated the lack of a strategic reason to stipulate the laboratory analysis reports into evidence, and it may well have been a plausible tactical decision to limit the People's witnesses to the CI and the detective in order to highlight the perceived weaknesses in their testimony. In this regard, defense counsel vigorously cross-examined the CI, fully explored her past criminal and fraudulent behavior, impeached her with prior inconsistent statements and highlighted her motives to fabricate. Trial counsel was able to elicit inconsistencies in the testimony of the CI and the detective and, to the extent that counsel elicited damaging testimony regarding the presence of [Jones'] vehicle at the residence, he did so as part of a consistent, coherent strategy to establish that the detective was unable to fully observe the CI, who was

portrayed as untrustworthy and capable of engaging in deceit if she had the opportunity to do so. Although counsel failed to object to the evidence of uncharged crimes or request limiting instructions, he put forth a reasonable defense theory with cogent opening and closing statements, vigorously cross-examined the People's witnesses and—significantly—secured an acquittal on one of the two charges. Accordingly, we are satisfied that [Jones] received meaningful representation.

*Jones,* 955 N.Y.S.2d at 696–97 (citations omitted).

The appellate court's rejection of these claims is both entirely reasonable and fully supported by the record. Thus, for the same reasons thoroughly and persuasively articulated by the Appellate Division, Jones fails to show that trial counsel's alleged omissions constituted deficient performance or that he was prejudiced by them.

 Jones' remaining two arguments fare no better. He first faults trial counsel for failing to poll the jury. The record indicates that, after the jury returned the verdict, the trial court asked defense counsel whether it would like to poll the jurors. Counsel declined the opportunity. But the Second Circuit has rejected the argument that counsel's failure to request a jury poll when expressly invited by the trial court to do so constitutes per se reversible error. *United States v. Mateo–Mejia,* 475 Fed. Appx. 773, 774 (2d Cir.2012). Moreover, the record does not indicate that any juror was uncertain of the verdict. Rather, the jury was instructed numerous times that "any verdict that you return, whether guilty or not guilty, must be unanimous." The jury is presumed to obey the court's instructions. *See, e.g., Zafiro v. United*

*States,* 506 U.S. 534, 540–41, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("juries are presumed to follow their instructions") (quoting *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)); *United States v. Whitten,* 610 F.3d 168, 191 (2d Cir.2010) ("We presume that juries follow instructions."); *United States v. Sabhnani,* 599 F.3d 215, 240 (2d Cir.2010). Furthermore, Jones has not established "a reasonable probability that, but for counsel's [decision not to poll the jurors individually], the result of the proceeding would have been different." *Mateo–Mejia,* 475 Fed.Appx. at 774 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

 He additionally contends that counsel erred by not arguing that the verdict was inconsistent and repugnant. Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." N.Y. CRIM. PROC. LAW § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 559 N.Y.S.2d 962, 559 N.E.2d 656, 657–58 (1990). Here, the indictment charged Jones with selling cocaine on two different occasions. The offenses therefore involved different elements, and the verdict finding him guilty of one sale is therefore not inconsistent with the verdict finding him not guilty on the other. *See People v. Coleman,* 120 A.D.2d 770, 501 N.Y.S.2d 507, 508 (1986). Because the charges were not inconsistent, Jones' trial counsel cannot be deemed ineffective for having failed to object to the verdict.[4] *See Lockhart v. Fretwell,* 506

4. Jones argues in the Petition only that his

counsel was ineffective for failing to object to

U.S. 364, 374, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim). Jones thus cannot demonstrate that trial counsel rendered ineffective assistance.

### c. *Sentencing Counsel*

The record reflects that the trial court appointed counsel to represent Jones at his sentencing after Jones fired the retained attorney who had represented him at trial. Jones contends that his sentencing counsel was ineffective because he failed to: 1) familiarize himself with Jones' case; 2) submit a presentencing report on Jones' behalf; 3) get in contact with Jones prior to sentencing; and 4) "argue [for] an adequate sentence."

█ With respect to his claim that sentencing counsel should have submitted a presentencing report on Jones' behalf, Jones merely alleges that the Probation Department's report included false information. He does not specify what information should have been corrected, and thus fails to show that counsel should be faulted for not doing so. Moreover, Jones does not establish a reasonable probability that counsel's failure to file a supplemental report prejudiced him. At sentencing, Jones disputed certain statements attributed to him in the presentencing report and continued to maintain his innocence. Likewise, counsel challenged the presentencing report to the extent that it stated that Jones did not own up to his drug addiction problems. It does not appear likely that the sentencing court's consideration of a supplemental report would have led it to impose a shorter sentence.

Jones' remaining claims are belied by the record. Jones stated at sentencing that his sentencing counsel came to see him on the Saturday before sentencing. The sentencing transcript also indicates that counsel had reviewed the presentencing report in detail, and his remarks at sentencing indicates that he had gained sufficient familiarity with Jones' case. Likewise, he requested the court to show Jones leniency and to impose the minimum sentence allowed by law. Accordingly, Jones also fails to show that sentencing counsel was ineffective.

### d. *Appellate Counsel*

Jones likewise argues that appellate counsel was ineffective because she did not: 1) assert that trial counsel was ineffective for stipulating to the laboratory

the allegedly-inconsistent verdict. But to the extent that his ineffective assistance of counsel claim may be construed to raise a standalone claim that the alleged inconsistency warrants reversal of his conviction, such claim is not cognizable on federal habeas review. *See Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."). And to the extent that Jones' claim can be viewed as attacking his conviction on the basis of compromise verdict, Jones cannot prevail on such a claim either. *See Ulster Cty. Court v. Allen*, 442 U.S. 140, 168, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (Burger, C.J., concurring) (noting the jury "reached what was rather obviously a compromise verdict," and "[c]ourts have long held that in the practical business of deciding cases the factfinders, not unlike negotiators, are permitted the luxury of verdicts reached by compromise"); *United States v. Green*, 523 F.2d 229, 235–36 (2d Cir.1975) ("Evidence that the jurors on their own agreed to a compromise verdict does not warrant a new trial."). Moreover, as discussed more fully with respect to Claim 3, *infra*, the evidence presented by the prosecution differed between the two drug sale dates. It therefore appears likely that the jury did not reach a compromise verdict in agreeing to convict on one and acquit on the other, but rather that the jury believed there was sufficient evidence to support one charge but not the other.

reports, failing to request *Brady*[5] and *Rosario*[6] material, failing to impeach Detective Caratelli with his grand jury testimony, and failing to move to dismiss based on Caratelli's allegedly false grand jury testimony; 2) properly argue that the verdict was against the weight of the evidence; 3) assert that Jones' due process rights were violated by the CI's cooperation agreement; 4) argue that the prosecutor committed misconduct in summation; 5) raise "all the judge's misconduct errors"; and 6) address on direct appeal any of Jones' *pro se* CPL § 440.10 claims.

■■■■■ Because one of the main functions of appellate counsel is to "winnow[ ] out weaker arguments on appeal," *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, *see Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citation omitted); *accord Barnes*, 463 U.S. at 754, 103 S.Ct. 3308. To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285, 120 S.Ct. 746 (citations omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate

that there was a reasonable probability that his claim would have been successful before the state's highest court." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir.1994) (citation and internal quotation marks and brackets omitted).

■■■ Jones falls far short of meeting these standards. The record indicates that Jones' appellate counsel submitted a well-reasoned and thorough 79–page brief arguing that: 1) Jones was denied a fair trial due to the court's admission of evidence of uncharged crimes; 2) trial counsel was ineffective for numerous reasons; 3) sentencing counsel rendered ineffective assistance in several ways; 4) the verdict was against the weight of the evidence and unsupported by legally sufficient evidence; and 5) the *Allen* charges were improper.

Moreover, Jones cannot demonstrate that the Court of Appeals would have found in his favor on any of the claims he faults appellate counsel for not raising. As previously discussed, trial counsel was not ineffective for stipulating to the laboratory reports and, because "the People voluntarily disclosed all paperwork prior to trial," *Jones*, 955 N.Y.S.2d at 696, counsel was not deficient in failing to request *Brady* and *Rosario* material. Likewise, the record reflects that trial counsel made the sound tactical decision not to impeach Detective Caratelli with his grand jury testimony. Before the grand jury, Caratelli testified that he saw the CI enter the apartment. At trial, however, he testified that he lost sight of her as she walked up the stairs and did not see her actually enter the apartment. Given that his trial testimony was more favorable to Jones,

---

5. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The term *"Brady"* is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

6. *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961). The term *"Rosario"* is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

trial counsel wisely refrained from bringing the grand jury testimony to the jury's attention. Moreover, trial counsel was not ineffective for failing to move to dismiss the indictment based on Caratelli's inconsistent statement because "[a] prior inconsistent statement does not rise to the level of perjury." *United States v. Lighten*, 525 Fed.Appx. 44, 47 (2d Cir.2013) (quoting *Smithwick v. Walker*, 758 F.Supp. 178, 186 (S.D.N.Y.1991)).

Similarly, counsel's brief on appeal reflects that she thoroughly argued that Jones' verdict was against the weight of the evidence, and cited applicable case authority and evidence in support. That the Appellate Division disagreed with her is insufficient to conclude that the claim was improperly argued. And as discussed in more detail below, Jones' claim that his right to due process was violated by the CI's cooperation agreement, which appears to be the only *pro se* CPL § 440.10 claim that appellate counsel did not raise, is without merit, as is Jones' claim that the prosecutor committed misconduct in summation.

▮ Finally, Jones fails to identify "all the judge's misconduct errors" that appellate counsel should have raised on direct appeal. It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g., Skeete v. New York*, No. 1:03–CV–2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04–CV–1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how

counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review). Jones therefore is not entitled to relief on any of his ineffective assistance of counsel claims.

*2. CI's Cooperation Agreement* (Claim 2)

▮ Jones additionally argues that his right to due process was violated because the CI's cooperation agreement provided that she would receive leniency in her 2009 fourth-degree grand larceny case in exchange for gathering evidence against Jones. But he identifies no Supreme Court authority—nor is this Court aware of any—holding that a defendant's right to due process is violated when the government promises a reduced sentence in return for a witness's cooperation. Rather, as the Second Circuit has explained, "[t]he government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases." *Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir.2003).

Jones nonetheless appears to contend that the agreement between the CI and the government constitutes an impermissible contingent fee arrangement. This argument relies on a decision in which a panel majority of the Fifth Circuit, interpreting *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962), found impermissible a contingent fee arrangement premised on the informant's ability to implicate a preselected individual and assist in obtaining a conviction. *See United States v. Cervantes–Pacheco*, 800 F.2d 452, 457–60 (5th Cir.1986).

The record here indicates that the CI received only a promise of a reduced sentence in exchange for her testimony and did not receive monetary compensation of the type found impermissible in *Williamson* and *Cervantes–Pacheco*. In any event, the Fifth Circuit, sitting *en banc*,

reversed the panel majority and overruled *Williamson*, concluding that "the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury to determine." *United States v. Cervantes–Pacheco*, 826 F.2d 310, 316 (5th Cir.1987) (en banc). The Second Circuit agreed, expressing its "confidence in the jury's ability to assess counsels' arguments about the inherent unreliability of 'purchased' testimony, and to evaluate the witness' credibility accordingly." *United States v. Persico*, 832 F.2d 705, 717 (2d Cir.1987).

Notably, Jones does not allege that the prosecution failed to disclose the CI's cooperation agreement, a situation in which habeas relief may be warranted as a *Brady* violation. *See DuBose v. Lefevre*, 619 F.2d 973 (2d Cir.1980). Nor can he: the record is clear that defense counsel thoroughly cross-examined the CI and Detective Caratelli about the cooperation agreement as well as the CI's lengthy criminal record and pending felony charges. Furthermore, the trial court instructed the jury that, in assessing a witness's credibility, it should consider whether a witness has a "motive to lie . . . and [if] that motive affected the truthfulness of that witness' testimony." Accordingly, Jones cannot prevail on this due process claim.

### 3. *False Testimony* (Claims 3, 4)

Jones next contends that Detective Caratelli testified falsely both at trial and before the grand jury.

#### a. *Trial Testimony*

At trial, Detective Caratelli testified that Jones drove a black Infinity sports car and that the car was parked at 1 Camp Avenue on either November 3 or 5, 2009 (the dates of the two drug sales charged in the indictment). On re-cross examination, Caratelli acknowledged that the presence of a car in the driveway indicated that the person was in the residence. Defense counsel asked, "So what you're saying here is . . ., if you follow that theory, that one of the days he wasn't there definitely then, right?" Caratelli responded, "Unless someone was borrowing his car."

In his *pro se* CPL § 440.10 motion, Jones stated that Detective Caratelli's testimony at a subsequent trial, *People v. Wingo*, Ind. No. 2009–062, shows that Caratelli falsely testified at Jones' trial because, according to Jones, Caratelli testified in the *Wingo* trial, "I know that when Shelton Jones is in 1 [C]amp Avenue his car is in the driveway." Jones asserts that Caratelli's subsequent testimony establishes that he was not at the residence on the day of one of the charged drug sales.

Construing Jones' *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam), this Court may discern that Jones asserts a freestanding claim of actual innocence based on newly discovered evidence. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, 115 S.Ct. 851, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, —— U.S. ——, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554–55, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71–72, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to

pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, 129 S.Ct. 2308, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F.Supp.2d 387, 417 (E.D.N.Y.2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417, 113 S.Ct. 853. "The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555, 126 S.Ct. 2064.

Measured against this standard, Jones has fallen short of establishing his actual innocence. The purported impeachment value of Caratelli's subsequent testimony fails to meet this demanding standard because Jones cannot show by clear and convincing evidence that no reasonable juror would have found him guilty had he been able to impeach Caratelli at trial with his subsequent statement. *See Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Indeed, the Supreme Court has stated that newly discovered impeachment evidence "is a step removed from evidence pertaining to the crime itself" and "tends only to impeach the credibility of" the witness. *Calderon v. Thompson*, 523 U.S. 538, 563, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). As such, newly discovered impeachment evidence "will seldom, if ever" establish actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Jones is thus not entitled to relief on this claim in any event.

### b. *Grand Jury*

■■■■ As previously discussed, Detective Caratelli testified before the grand jury that he saw the CI enter the apartment. At trial, however, he testified that he lost sight of her as she walked up the stairs and did not see her actually enter the apartment. Jones argues that this inconsistent statement demonstrates that Detective Caratelli perjured himself before the grand jury. But, again, "[a] prior inconsistent statement does not rise to the level of perjury." *Lighten*, 525 Fed.Appx. at 47. And even assuming, without deciding, that his indictment was secured by false testimony, Jones' subsequent conviction forecloses any potential relief here. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g., United States v. Mechanik*, 475 U.S. 66, 67, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit

jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989); *see also Davis v. Mantello,* 42 Fed.Appx. 488, 490–91 (2d Cir.2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)). Jones is therefore not entitled to relief on this false testimony claim either.

### 4. *Prosecutorial Misconduct* (Claim 5)

Jones further claims that the prosecutor conducted misconduct in his summation by: 1) "fabricat[ing] evidence of corroboration, and other evidence"; 2) vouching for the CI's credibility; 3) "t[elling] the jury not [to] adhere to the court's orders"; 4) misleading the jury by asking it to speculate that drugs were flushed down the toilet when Jones was arrested inside the apartment; and 5) referring to Jones as a drug dealer and describing drug dealers as dangerous and suspicious.

 To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Under this standard, only "egregious" prosecutorial misconduct can give rise to a constitutional claim. *See Miranda v. Bennett,* 322 F.3d 171, 180 (2d Cir.2003) (quoting *Donnelly,* 416 U.S. at 647–48, 94 S.Ct. 1868). A prosecutor's comments constitute "grounds for reversal only when the remarks caused 'actual prejudice.' " *Dunn v. Sears,* 561 F.Supp.2d 444, 455 (S.D.N.Y.

2008) (citing *Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998)). "In determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.' " *Id.* at 457 (quoting *United States v. Thomas,* 377 F.3d 232, 245 (2d Cir.2004)).

Jones' claims fall far short of meeting these standards. As an initial matter, his claim that the prosecutor fabricated evidence, including evidence of corroboration, is too vague to support a claim of prosecutorial misconduct. *See, e.g., Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987) (court can deny habeas petition when claims are "merely 'vague, conclusory, or palpably incredible' "); *United States v. Romano,* 516 F.2d 768, 771 (2d Cir.1975) (habeas relief properly denied where prosecutorial misconduct claim consisted of only "conclusory allegations"). Moreover, this Court's review of the record in this case reveals that the prosecutor did not misrepresent the record but rather made comments that represented a fair inference from the evidence presented at trial. That review also demonstrates that, contrary to Jones' assertion, the prosecutor did not tell the jury to disobey the trial court's orders.

 Jones' claim that the prosecutor improperly vouched for the CI's credibility is also belied by the record. It is well-established that "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not before the jury. *United States v. Perez,* 144 F.3d 204, 210 (2d Cir.1998) (quoting *United States v. Rivera,* 22 F.3d 430, 438 (2d Cir.1994)). Prosecutorial "vouching," in particular, is improper because it "car-

ries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Newton*, 369 F.3d 659, 681 (2d Cir.2004) (quoting *United States v. Young*, 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). However, "[w]hile the prosecution may not 'vouch' for the credibility of its witnesses, 'the government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.'" *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Thai*, 29 F.3d 785, 807 (2d Cir.1994)). Here, the record indicates that defense counsel argued in summation that the CI was "far from credible" and "far from believable." Although the prosecutor argued that she was "credible" and had "testified truthfully," a fair reading of the record indicates that those statements were properly made in response to the defense's attack on the witness's credibility. Moreover, the prosecutor stated that it was for the jury "to decide if she [was] credible or not."

■ Nor did the prosecutor mislead the jury by speculating that drugs were flushed down the toilet. During summation, defense counsel argued that, when police searched the apartment, there was no indication of a drug deal and no cocaine was found in the apartment. The prosecutor reminded the jury in summation of Detective Caratelli's testimony that he heard the toilet flush when the police entered the apartment and that "may very well explain why there was no cocaine" in the apartment. It appears that Jones' claim argues that the prosecutor was acting as an unsworn witness when he made the statement. The record here, however, demonstrates that the prosecutor's comment responded to defense counsel's summation, which is proper under New York law. *See People v. Halm*, 81 N.Y.2d 819, 595 N.Y.S.2d 380, 611 N.E.2d 281, 282 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); *People v. Perez*, 18 A.D.3d 480, 794 N.Y.S.2d 439, 440 (2005) (statements during summation are permissible if they constitute a "fair comment on the evidence" at trial and reasonable inference therefrom, or a "fair response to remarks made by the defense counsel during summation"). This principle is fully consistent with federal law, under which an argument that is an "invited response" to defense counsel's remark does not prejudice the jury. *United States v. Young*, 470 U.S. 1, 11–13, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In any event, Jones cannot show that the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process" as to be cognizable on federal habeas review. *Parker v. Matthews*, —— U.S. ——, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012) (citation omitted).

■ Finally, Jones cannot prevail on his claim that the prosecutor improperly referred to him as a drug dealer and stated that drug dealers were "dangerous and suspicious." It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel. *See, e.g., United States v. Biasucci*, 786 F.2d 504, 513–14 & n. 9 (2d Cir.1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] . . . [f]or in-

stance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted)); *People v. LaPorte,* 306 A.D.2d 93, 762 N.Y.S.2d 55, 57–58 (2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted). But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir.1995) (citation and internal brackets omitted). Here, the denigrating comments may be viewed as proper inferences from the evidence presented at trial and constituted a fair response to defense counsel's summation, in which he challenged the veracity of the prosecution's witnesses and the strength of its case. *See Knight v. Walsh,* 524 F.Supp.2d 255, 287 (W.D.N.Y.2007). Moreover, a review of the record reflects that the prosecutor's comments that "[d]rug dealers are not known" and "don't do these kinds of things in the open," which Jones apparently characterizes as referring to drug dealers as "dangerous and suspicious," were offered solely to explain why the police needed to use drug-addict informants who had themselves violated the law in order to catch them. In short, none of the prosecutor's statements during summation rises to the level of egregious conduct required for habeas relief.

### 5. *Trial Court Errors* (Claim 6)

Finally, Jones contends that the trial court erred when it gave a coercive *Allen* charge and when it failed to read two jury notes into the record.

#### a. *Allen Charge*

The propriety of a state court's jury instructions is ordinarily a matter of state law and does not raise a federal constitutional questions. *See Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Estelle,* 502 U.S. at 68, 112 S.Ct. 475. A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin,* 471 U.S. 307, 309, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone,* 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis,* 471 U.S. at 323–24 & n. 9, 105 S.Ct. 1965 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous, it must also violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a

whole and the trial record. *Estelle*, 502 U.S. at 72, 112 S.Ct. 475. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72–73, 112 S.Ct. 475. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.*

As previously discussed, when the jury first indicated that it was deadlocked, the trial court instructed the jury as follows:

Ladies and gentlemen of the jury, I have a note indicating that you have been unable to agree on a verdict. As I told you in my initial instructions, any verdict that you return, whether guilty or not guilty, must be unanimous. If you cannot reach a unanimous agreement, you cannot return a verdict, a new trial will have to be scheduled before a different jury. It is not, however, uncommon for a jury to have difficulty initially in reaching a unanimous verdict, and it is not uncommon for a jury to believe that they will never be able to reach a unanimous verdict but after further deliberations most juries are able to reach a unanimous verdict. And so I will ask you to continue your deliberations.

But before I do, I want to remind you that when this trial began, many prospective jurors were called and questioned, many were excused for one reason or another, but you, ladies and gentlemen, were selected to serve. That means that of all of the prospective jurors called in this case, you were the ones whom both sides expressed confidence in. Both sides were convinced that each of you would be fair and impartial, that each of you would listen carefully to the evidence and to the arguments and to your fellow jurors and work hard to reach a unanimous verdict that was consistent with the law and the evidence. Both sides continue to have confidence in you, as do I.

Ladies and gentlemen, you make up a very good jury. There is no reason to believe that the presentation of this case again would be to a jury that is any more intelligent, reasonable, hard working or fairer than you are. I want to emphasize that I'm not asking any juror to violate his or her conscience or to abandon his or her best judgment. Any verdict that you reach must be a verdict of each juror and not mere acquiescence to the conclusion of others, but I am asking that you continue deliberating and to resume your deliberations with an open mind.

Start with a fresh slate. Do not be bound by how you felt before, whether you favored conviction or acquittal. Have the courage to be flexible, be willing to change your position if reevaluation of the evidence convinces you that a change is appropriate. Do not, out of pride or stubbornness, adhere to an opinion or conclusion that you no longer believe is correct. Be honest with yourselves and with the other jurors. Listen to the other jurors and evaluate what they have to say. Do not let anything prevent you from carefully considering what they said.

Remember that each of you made a commitment when you became a juror that requires you to reason and deliberate together to reach a fair and a just verdict based only on the evidence.

Of course while a discussion among all jurors may at times be intense, I'm sure you understand that it can and should be respectful of the feelings and opinions of

other jurors. I urge that each of you make every possible effort to arrive at a just verdict here. Make certain that the decision that you reach is based solely on the evidence and the law, that it is not influenced or affected by sympathy for or against any individual or for or against either side. Be sure that no baseless speculation, no bias or prejudice for or against any individual enters into your deliberations. If I can help you in any way, whether through a further or repeated read back or through a clarification or restatement of the law, I stand ready to do so.

Again, please make every effort consistent with your conscience and the evidence in this case to harmonize your views and decision in this case with those of the other jurors. To the best of your ability, I ask you to apply common sense and good judgment.

Finally, ladies and gentlemen, I appreciate that the process of deliberation can be difficult. Frankly, it wasn't intended to be easy, so in accord with your oath, please continue to deliberate with a view toward reaching a verdict.

After the jury continued deliberations and again informed the court that it was unable to reach a unanimous verdict, the court instructed the jury as follows before releasing them for the day:

I've received another note from you indicating that you are still unable to reach a verdict. As I told you in my earlier instructions, any decision that you reach must be a unanimous agreement of all of you. It appears that you have gotten yourselves into a position where at the moment you are unable to agree. It's getting late, so after consultation with the attorneys, I'm going to send you home for the evening and ask you to be back here at 9:30 tomorrow morning. Hopefully, with a chance to think about this case overnight, you will be able to resume your discussions and hopefully come to a unanimous verdict.

If you could do so without violating individual conscience, it is important that a verdict be arrived at, if at all possible. If we cannot get a verdict, then this case will have to go before another jury and there's no reason to suspect that that jury will be any better at this than you were, so I'm going to send you home. 9:30 tomorrow morning. I don't want you to start discussing this case at all until all 12 of you are present and I have told you to begin. I will be here. The attorneys will be available. The defendant will be available. But you can't begin deliberations until all 12 of you are in the room together.

. . . .

Sleep on the case. Come back in the morning and let's see if after having been rested, that a unanimous verdict can be arrived at.

▆▆▆▆ The Supreme Court has held that, because of the potential coercive effects of an *Allen* charge, such instruction should be evaluated "in its context and under all the circumstances." *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)) (per curiam). However, "the mere giving of [an *Allen* ] charge raises no claim cognizable in federal habeas corpus." *Graham v. Harris,* 452 F.Supp. 137, 140 (S.D.N.Y.1978). Thus, to sustain his claim that the charge violated due process, Jones must show that the claim was coercive.

In this case, the wording of the court's *Allen* charge encouraged the jurors to "harmonize [their] views and decision in this case" and asked them to "continue to deliberate with a view toward reaching a verdict." This language comports with the

standard language of a constitutionally acceptable *Allen* charge. *See United States v. Hynes,* 424 F.2d 754, 757 n. 2 (2d Cir. 1970). Likewise, the record shows that the trial court did not single out minority jurors, a factor which the *Lowenfield* Court found instructive. *See Lowenfield,* 484 U.S. at 237–38, 108 S.Ct. 546. Moreover, "the [trial] court repeated warned the jurors not to surrender their conscientiously held beliefs, which is an instruction [the Second Circuit has] previously held to mitigate greatly a charge's potential coercive effect." *United States v. Vargas–Cordon,* 733 F.3d 366, 378 (2d Cir.2013) (citing *United States v. Henry,* 325 F.3d 93, 107 (2d Cir.2003)). And the fact that the trial court gave what Jones characterizes as two separate *Allen* charges does not necessarily evidence coercion. *See Graham,* 452 F.Supp. at 140 (holding that issuing 2 separate *Allen* charges was not coercive and the standard rule of whether there was coercion still needed to be evaluated under *Lowenfield* ). Here, the context and circumstances surrounding the giving of the two charges in no way indicates coercion. The timing of the conclusion of the first day and the receipt of two notes from the jury led the court to give the instructions when it did. Thus, there was no coercion present in the court's charges, and this claim must also be rejected.

### b. *Jury Notes*

 Lastly, Jones appears to argue that the court erred because it did not read the aforementioned jury notes into the record. New York CPL § 310.30 provides:

At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper.

The New York Court of Appeals has construed this provision to require that, "whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel." *People v. O'Rama,* 78 N.Y.2d 270, 574 N.Y.S.2d 159, 579 N.E.2d 189, 192 (1991).

As an initial matter, copies of the jury notes appear as trial exhibits in the record before this Court, so it appears that the trial court complied with CPL § 310.30 in this respect. Moreover, there is no corollary requirement to CPL § 310.30 under federal law. Consequently, any alleged error in the court's handling of the jury notes was solely a violation of state law, beyond the purview of this Court, and not a constitutional violation. *See Cornado v. Bellnier,* No. 10–CV05265, 2012 WL 6644637, at *5–6 (S.D.N.Y. Sept. 20, 2012) ("A claim premised on a violation of [CPL § ] 310.30 does not allege a violation of a federally protected right."). Jones is therefore not entitled to relief on this claim.

## V. CONCLUSION

Jones is not entitled to relief on any ground raised in his Petition.

IT IS THEREFORE ORDERED THAT the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED THAT the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El,* 537 U.S. at 327, 123 S.Ct. 1029)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); 2d Cir. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.